# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DONALD J. TRUMP FOR PRESIDENT, INC.**, 725 Fifth Avenue, New York, NY 10022, <br><br> Plaintiff, <br><br> v. <br><br> **WP COMPANY LLC** d/b/a *The Washington Post* Serve: CT Corporation System 1015 15th St., NW, Suite 100 Washington, D.C. 20005, <br><br> Defendant. | Civil Action No. <br><br> **COMPLAINT FOR DAMAGES** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Donald J. Trump for President, Inc. (the "Campaign"), by and through its undersigned attorneys, alleges as follows:

## INTRODUCTION AND SUMMARY OF CLAIM

1. Defendant WP Company LLC d/b/a *The Washington Post* ("*The Post*") published false and defamatory statements of and concerning the Campaign in two articles published in June 2019 (the "Defamatory Articles").

2. On or about June 13, 2019, *The Post* published the article entitled "Trump just invited another Russian attack. Mitch McConnell is making one more likely" (the "June 13 Article"), by Greg Sargent, which contained the defamatory claim that Special Counsel Robert Mueller concluded that the Campaign "tried to conspire with" a "sweeping and systematic" attack by Russia against the 2016 United States presidential election.

3. The statement in the June 13 Article is false and defamatory. In fact, Special Counsel Mueller's *Report on the Investigation into Russian Interference in the 2016 Presidential Election* released on or about April 18, 2019 (the "Mueller Report"), nearly two months before the June 13 Article, came to the opposite conclusion of the June 13 Article, namely, the Mueller Report concluded there was **no conspiracy** between the Campaign and the Russian government, and **no United States person** intentionally coordinated with Russia's efforts to interfere with the 2016 election.

4. On or about June 20, 2019, *The Post* published the article entitled "Trump: I can win reelection with just my base" (the "June 20 Article"), by Paul Waldman, which contains the defamatory statement "who knows what sort of aid Russia and North Korea will give to the Trump campaign, now that he has invited them to offer their assistance?"

5. The statement in the June 20 Article is false and defamatory. There has never been any statement by anyone associated with the Campaign or the administration "inviting" Russia or North Korea to assist the Campaign in 2019 or beyond. There also has never been any reporting that the Campaign has ever had any contact with North Korea relating to any United States election.

6. *The Post* was well aware at the time of publishing the foregoing statements that they were not true. Obviously, the Mueller Report is a public record that has been extensively reported in *The Post*. Further, there is an extensive record of statements from the Campaign and the White House expressly disavowing any intention to seek Russian assistance. Finally, despite extensive reporting on the Campaign's activities, there is not a shred of evidence that there have been any contacts between the Campaign and North Korea, let alone any invitation transmitted to North Korea to interfere in the election.

7. The Campaign files this lawsuit to: publicly establish the truth, properly inform *The Post*'s readers (and the rest of the world) of the true facts, and seek appropriate remedies for the harm caused by *The Post*'s false reporting.

8. The articles at issue herein also are part of the *The Post*'s systematic pattern of bias against the Campaign, designed to maliciously interfere with and damage its reputation and ultimately cause the organization to fail.

## THE PARTIES

9. Plaintiff Donald J. Trump for President, Inc. is a Virginia corporation with its principal place of business in New York, New York. The Campaign operated the presidential election campaign of Donald J. Trump commencing in 2015, and has operated his reelection campaign since the President's election.

10. On information and belief, defendant WP Company LLC d/b/a *The Washington Post* is a District of Columbia limited liability company with its principal place of business in Washington, D.C. On information and belief, defendant WP Company LLC d/b/a *The Washington Post* owns and operates *The Washington Post* newspaper and the www.WashingtonPost.com website.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1), because the Campaign resides in the State of New York, and *The Post* resides in the District of Columbia. The amount in controversy is in the millions of dollars, which exceeds the statutory minimum of $75,000.

12.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) & (b)(2), in that *The Post* is located in this District and published the defamatory statements alleged herein within this District.

## STATEMENT OF FACTS

13.     On or about June 13, 2019, *The Post* published the June 13 Article, which contained the defamatory statement that Special Counsel Robert Mueller concluded that the Campaign "tried to conspire with" a "sweeping and systematic" attack by Russia against the 2016 United States presidential election.

14.     The June 13 Article is false and defamatory. The Mueller Report is a public record, and repeatedly finds that there was **no conspiracy** between the Campaign and the Russian government. For instance, the Executive Summary of the Mueller Report concludes that "the evidence was not sufficient to charge that any member of the Trump Campaign conspired with representatives of the Russian government to interfere in the 2016 election". The Executive Summary also concludes that "Some [Russian Internet Research Agency] employees, posing as U.S. persons and without revealing their Russian association, communicated electronically with individuals associated with the Trump Campaign and with other political activists to seek to coordinate political activities, including the staging of political rallies. The investigation did not identify evidence that any U.S. persons knowingly or intentionally coordinated with the IRA's interference operation." The Mueller Report discusses contacts between individuals associated with the Campaign and concludes: "Based on the available information, the investigation did not establish such coordination."

15.     On or about June 20, 2019, *The Post* published the June 20 Article. The June 20 Article contains the defamatory statement "who knows what sort of aid Russia and North Korea will give to the Trump campaign, now that he has invited them to offer their assistance?"

16.     The June 20 Article is false and defamatory. The Campaign has repeatedly and openly disclaimed any intention to seek Russia's help in the 2020 election. The examples of this are too numerous to fully enumerate, but examples include: (a) then-Press Secretary Sarah Sanders stated on August 2, 2018 that, "Since the beginning of his administration, President Trump has implemented a whole-of-government approach to safeguard our nation's elections. The President has made it clear that his administration will not tolerate foreign interference in our elections from any nation-state or other dangerous actor"; (b) on September 12, 2018, while signing an executive order imposing sanctions on foreign countries who interfere in United States elections, the White House issued a statement that "the United States will not tolerate any form of foreign meddling in our elections"; and (c) on May 13, 2019, the White House stated it would "certainly" agree not to use any information hacked or stolen by foreign adversaries in the 2020 election.

17.     As for *The Post*'s statement that the Campaign is seeking North Korea's help in the 2020 election, this has been made up out of whole cloth. Not only has nobody affiliated with the Campaign made such a statement, but there has been no reporting by any reputable news outlet that the Campaign has sought or will seek North Korea's assistance, or has had any contact with North Korea regarding the 2020 election.

18.     It is not surprising that *The Post* would publish such blatant false attacks against the Campaign. There is extensive evidence that *The Post* is extremely biased against the Campaign, and against Republicans in general. This evidence includes, among other things, the

fact that *The Post* has endorsed the Democrat in every United States presidential election since it started endorsing a presidential candidate in 1976, with the exception of 1988 when *The Post* did not endorse any candidate.

19. There also is extensive evidence that *The Post*'s writers, Messrs. Sargent and Waldman, are extremely biased against the Campaign. Mr. Sargent has been labeled a "liberal writer", has written a book which charges that the current presidency "raises the specter of authoritarian rule", and has published many anti-administration tweets. Mr. Waldman has authored numerous anti-Trump articles and formerly worked for Media Matters for America, an activist organization which is sharply critical of the administration.

20. *The Post* clearly had a malicious motive, but more importantly acted with reckless disregard for the truth. The Mueller Report and its conclusions are a matter of widely disseminated public record. Extensive public information, known to and available to *The Post*, confirms that the Campaign has not sought Russian help in the 2020 election and has disavowed such assistance, and that there have been no reported contacts between the Campaign and North Korea relating to any United States election. *The Post* knowingly disregarded all of this information when it decided to publish the Defamatory Articles.

21. *The Post* never informed the Campaign that it was going to publish the claims in the Defamatory Article, did not afford the Campaign an opportunity to verify the accuracy of the claims before publication, and did not reach out to the Campaign for comment.

22. The Defamatory Article defamed the Campaign in its trade or profession, because it falsely accuses the Campaign of pursuing a strategy of disloyal, unethical, and potentially unlawful conduct: seeking the assistance of a foreign adversary of the United States to improperly influence an election result.

23. The Defamatory Article has forced, and will force the Campaign, to expend funds on corrective advertisements and to otherwise publicize the facts that it did not conspire with Russia in 2016 and is not seeking Russia's or North Korea's help in the 2020 election. The Campaign was damaged in the millions of dollars, the specific amount to be proven at trial.

## FIRST CAUSE OF ACTION

**(Libel)**

24. The Campaign realleges and incorporates by this reference Paragraphs 1 through 23 as though fully set forth herein.

25. *The Post* published the Defamatory Articles on or about June 13 and June 20, 2019.

26. The Defamatory Articles contain false statements of fact.

27. The false statements in the Defamatory Articles are of and concerning the Campaign, in that they allege that the Campaign tried to conspire with Russia in 2016, and is actively considering seeking Russia's and North Korea's assistance in the 2020 election campaign.

28. The Campaign is concededly a public figure, and the false statements were made with actual malice, as alleged herein.

29. The false statements defamed the Campaign in its trade or profession.

30. The false statements caused actual damage to the Campaign, the full amount of which will be proven at trial, but is in the millions of dollars.

31. *The Post* acted with malice or reckless disregard for the Campaign's rights, thereby justifying an award of punitive damages.

## DEMAND FOR JURY TRIAL

The Campaign hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Campaign prays for relief as follows:

    i.    Compensatory damages in the millions of dollars, according to proof;

    ii.    Presumed damages according to proof;

    iii.    Punitive damages according to proof;

    iv.    Costs of suit; and

    v.    Such other and further relief as the Court may deem proper.

Dated: March 3, 2020

Respectfully submitted,

TOBIN O'CONNOR & EWING

By: /s/ David C. Tobin_____
David C. Tobin, Esq. D.C. Bar #395959
TOBIN O'CONNOR & EWING
5335 Wisconsin Avenue NW, Suite 700
Washington, D.C. 20015
Telephone: (202) 362-5900
DCTobin@TobinOConnor.com

Charles J. Harder, Esq.
*Pro Hac Vice Application forthcoming*
HARDER LLP
132 South Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Telephone: (424) 203-1600
CHarder@HarderLLP.com