**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., | : : : | | |
| Plaintiff, | : : | Civil Action No.: | 20-626 (RC) |
| v. | : : | Re Document No.: | 12 |
| WP COMPANY LLC, d/b/a THE WASHINGTON POST, | : : : : | | |
| Defendant. | : | | |

### MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

In this defamation action, Donald J. Trump for President, Inc. (the "Trump Campaign") alleges that WP Company LLC d/b/a/ The Washington Post (the "Post") defamed it in two Post articles published in 2019. Now before the Court is the Post's motion to dismiss. Def.'s Mot. to Dismiss for Failure to State a Claim ("Mot."), ECF No. 12. For the reasons described below, the Court agrees with the Post that the Complaint fails to state a claim. Accordingly, it will grant the Post's motion but dismiss the Complaint without prejudice.

### II. BACKGROUND

The two Post articles at issue were both published in June 2019 in the Post's online opinion section, "The Plum Line." *See* Greg Sargent, *Trump just invited another Russian attack. Mitch McConnel is making one more likely.*, Wash. Post (June 13, 2019, 9:25 AM), https://www.washingtonpost.com/opinions/2019/06/13/trump-just-invited-another-russian-attack-mitch-mcconnell-is-making-one-more-likely/ [hereinafter "Sargent Article"]; Paul

Waldman, *Trump: I can win reelection with just my base*, Wash. Post (June 20, 2019, 12:36 PM), https://www.washingtonpost.com/opinions/2019/06/20/trump-i-can-win-reelection-with-just-my-base/ [hereinafter "Waldman Article"].[1]  As relevant here, the Sargent Article discusses special counsel Robert Mueller's investigatory report (the "Mueller Report") into Russian interference in the 2016 U.S. presidential election:

> Special counsel Robert S. Mueller III's investigation <u>concluded</u> that Russia's "sweeping and systematic" attack involved massive cybertheft aimed at one major U.S. political party and disinformation warfare designed to divide the country along racial and social lines.
>
> Mueller <u>also concluded</u> that Trump and/or his campaign eagerly encouraged, tried to conspire with, and happily profited off of those efforts.  Yet Mueller did not find sufficient evidence of a criminal conspiracy.

Sargent Article at 4 (underlines in original).  The word "concluded" in this passage hyperlinks to the publicly available Mueller Report.  *See* N.Y. Times, *Read the Mueller Report: Searchable Document and Index*, N.Y. Times (Apr. 18, 2019), https://www.nytimes.com/interactive/2019/04/18/us/politics/mueller-report-document.html [hereinafter "Mueller Report"].  The words "also concluded" in the passage hyperlink to an article in The Atlantic that discusses the Mueller Report.  *See* Benjamin Wittes, *Five Things I Learned From the Mueller Report*, The Atlantic (Apr. 29, 2019),

---

[1] The Post appended all five documents discussed in this Opinion in its motion to dismiss. *See* Ex. A to Mot. (Sargent Article), ECF No. 12-1; Ex. B to Mot. (Waldman Article), ECF No. 12-2; Ex. C to Mot. (Mueller Report), ECF No. 12-3; Ex. D to Mot. (Wittes Article), ECF No. 12-4; Ex. E to Mot. (ABC Interview), ECF No. 12-5.  For ease of reference, the Court will cite to each exhibit's ECF pagination when discussing these documents.

The Court will consider the Sargent and Waldman Articles and the Mueller Report because they are incorporated by reference in the Complaint.  *See Farah v. Esquire Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2013).  The Court will also take judicial notice of the Wittes Article and ABC Interview because their authenticity is undisputed and each is hyperlinked to a challenged defamatory statement and thus "integral" to the Trump Campaign's defamation claim.  *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *see also Shive-Ayala v. Pacelle*, No. 21-cv-704, 2022 WL 782412, at *2 n.1 (D.D.C. Mar. 15, 2022).

https://www.theatlantic.com/ideas/archive/2019/04/ben-wittes-five-conclusions-mueller-report/588259/ [hereinafter "Wittes Article"].  According to the Trump Campaign, the Sargent Article's statement that the Trump Campaign tried to conspire with Russian efforts to interfere in the 2016 U.S. presidential election is false and defamatory.  Compl. ¶¶ 2–3, 13–14, 27.

The second article at issue in this case is the Waldman Article, which was published on June 20, 2019.  As relevant here, the Waldman Article discusses Trump's 2020 reelection campaign strategy:

> The 2020 election will obviously be distinct in all kinds of ways we can't yet anticipate.  For instance, who knows what sort of aid Russia and North Korea will give to the Trump campaign, now that he has <u>invited</u> them to offer their assistance?

Waldman Article at 4 (underline in original).  The word "invited" in this passage hyperlinks to an unedited transcript of an interview that ABC News conducted with Trump a week earlier at the Oval Office.  ABC News, *ABC News' Oval Office interview with President Trump*, ABC News (June 13, 2019, 12:57 PM), https://abcnews.go.com/Politics/abc-news-oval-office-interview-president-donald-trump/story?id=63688943 [hereinafter "ABC Interview"].  According to the Trump Campaign, the Waldman Article's statement that the Trump Campaign invited Russia's and North Korea's assistance in the 2020 election is false and defamatory.  Compl. ¶¶ 4–5, 16–17, 27.

On March 3, 2020, the Trump Campaign sued the Post in this District, alleging one count of libel concerning the defamatory statements made in the Sargent and Waldman Articles.  Compl.  ¶¶ 24–31.  The case was randomly assigned to then-Judge Ketanji Brown Jackson, who held oral argument on the Post's fully briefed motion to dismiss.  Min. Entry (Dec. 10, 2020); Tr. of Mot. Hr'g, ECF No. 18.  Upon then-Judge Jackson's confirmation to the D.C. Circuit, the case was reassigned to Judge Florence Pan.  *See* Docket Entry (Oct. 1, 2021).  Upon Judge Pan's

confirmation to the D.C. Circuit, it was randomly reassigned to this Court.  *See* Docket Entry (Sept. 26, 2022).  The Post's motion to dismiss is ripe for decision.

### III.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

### IV.  ANALYSIS

The Court agrees with the parties that New York law governs this case.  Mot. at 13–14; Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. to Dismiss ("Opp'n") at 3–4, ECF No. 13. "Federal courts sitting in diversity must apply the conflicts of law rules of the jurisdiction in

4

which they sit." *Hourani v. Psybersolutions LLC,* 164 F. Supp. 3d 128, 140 (D.D.C. 2016), *aff'd*, 690 F. App'x 1 (D.C. Cir. 2017). For defamation suits in the District of Columbia, "[t]he weight of authority considers that the law to be applied is . . . [that of] the place where the plaintiff suffered injury by reason of his loss of reputation." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 626 (D.C. Cir. 2001) (cleaned up) (citing Restatement (Second) of Conflict of Laws § 150 (Am. L. Inst. 1971))). "A legal person's principal place of business is the place where its reputation will usually be most grievously affected." Restatement (Second) of Conflict of Laws § 150 cmt. f; *accord Mar-Jac Poultry, Inc. v. Katz*, 773 F. Supp. 2d 103, 112 (D.D.C. 2011). Because the Trump Campaign's principal place of business is in New York, Compl. ¶ 9, the Court will apply New York defamation law. "Under New York law a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citations omitted).

Because state defamation law also implicates First Amendment protections, the Court will apply D.C. Circuit caselaw discussing limitations on state defamation law that "emanate" from the Constitution. *Montgomery v. Risen*, 197 F. Supp. 3d 219, 235 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017). For example, where, as here, the Trump Campaign concedes that it is a public figure, Compl. ¶ 28, the Constitution requires it to "prove by 'clear and convincing evidence' that the speaker made the statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 240 (D.C. Cir. 2021) (quoting *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 589–90 (D.C. Cir. 2016)).

The Court will proceed to consider whether the Trump Campaign has adequately pled a defamation claim against each of the Post articles.

### A. Sargent Article

According to the Trump Campaign, the Sargent Article's statement that the Trump Campaign "tried to conspire with" Russian efforts to interfere in the 2016 U.S. presidential election is false and defamatory. Compl. ¶¶ 2–3, 13–14, 27. The Trump Campaign argues that this statement is factual as opposed to non-actionable opinion. *Id.* ¶ 26. It further avers that this statement is false because the Mueller Report specifically concluded that there was insufficient evidence to charge any member of the Trump Campaign with criminal conspiracy. *Id.* ¶ 14. Finally, it argues that the Post acted with actual malice because it knowingly or recklessly chose to publish the Sargent Article despite being aware of the "extensively reported" and publicly available Mueller Report. *Id.* ¶ 6.

The Post vehemently disagrees with these characterizations. It argues that the statement at issue in the Sargent Article is constitutionally protected opinion. Mot. at 19–21. The Post also claims that asserting the Trump Campaign "tried" to conspire with Russia is fully consistent with the Mueller Report and does not contradict the Mueller Report's conclusion that there was insufficient evidence of a criminal conspiracy. Reply Mem. in Supp. of Def.'s Mot. to Dismiss ("Reply") at 17, ECF No. 15. The Post further insists that the Complaint fails to allege actual malice because the Sargent Article includes information that cuts against the allegedly defamatory statement, and because its interpretation of the Mueller Report is a rational interpretation of an ambiguous government report. Mot. at 27–29. Finally, the Post argues that New York law's "fair report privilege" insulates the Sargent Article from liability because its report of the Mueller Report is substantially accurate. *Id.* at 30–34.

The Court declines to address each of the parties' arguments in detail, for it concludes that the Trump Campaign has failed to adequately plead actual malice.  That failure alone warrants granting the Post's motion to dismiss.  *See Arpaio v. Cottle*, 404 F. Supp. 3d 80, 86 (D.D.C. 2019) (dismissing defamation claim because "Plaintiff's Complaint does not plead any facts to support the key element of actual malice"); *Hourani*, 164 F. Supp. 3d at 141 (dismissing the plaintiff's defamation claims for failure to plausibly allege actual malice).

"The actual malice standard is famously 'daunting.'"  *Tah*, 991 F.3d at 240 (quoting *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996)).  "A plaintiff must prove by 'clear and convincing evidence' that the speaker made the statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Id.* (citation omitted).  Put another way, "the defendant must have made the false publication with a high degree of awareness of probable falsity," or "must have entertained serious doubts as to the truth of his publication."  *Id.* (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989)).  To establish actual malice, "[t]he speaker's failure to meet an objective standard of reasonableness is insufficient; rather the speaker must have actually 'harbored subjective doubt.'"  *Id.* (citation omitted).  Thus, "even an 'extreme departure from professional standards' is insufficient to prove actual malice on its own."  *Id.* at 242 (citation omitted).

"[T]he D.C. Circuit has further fleshed out this inquiry, holding that to establish actual malice a plaintiff 'must show, by clear and convincing evidence, that when the defendants published the alleged defamation[ ] they were subjectively aware that it was highly probable that the story was (1) fabricated; (2) so inherently improbable that only a reckless person would have put [it] in circulation; or (3) based wholly on an unverified anonymous telephone call or some other source that appellees had obvious reasons to doubt."  *Risen*, 197 F. Supp. 3d at 259

(cleaned up) (quoting *Lohrenz v. Donnelly*, 350 F.3d 1272, 1283 (D.C. Cir. 2003)). "The actual malice standard reflects the cornerstone First Amendment principle that 'speech relating to public officials and public figures, as distinct from private persons, enjoys greater protection.'" *Tah*, 991 F.3d at 240 (quoting *Jankovic*, 822 F.3d at 584).

Here, the Trump Campaign fails to allege that the Sargent Article was published with actual malice. For starters, the Complaint is replete with conclusory allegations. *See, e.g.*, Compl. ¶ 6. ("*The Post* was well aware at the time of publishing . . . that [the statement in the Sargent Article was] not true."); *id.* ¶ 20 ("*The Post* clearly had a malicious motive, but more importantly acted with reckless disregard for the truth."); *id.* (claiming that the Post "knowingly disregarded" "[t]he Mueller Report" and "[e]xtensive public information"). As the Trump Campaign knows, these "[t]hreadbare recitals of the elements of a cause of action" cannot survive a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678; *see Donald J. Trump for President, Inc. v. CNN Broad., Inc.*, 500 F. Supp. 3d 1349, 1357–58 (N.D. Ga. 2020) (dismissing defamation suit because allegations of actual malice were conclusory); *Donald J. Trump for President, Inc. v. The New York Times Co.*, No. 152099/2020, 2021 WL 938979, at *2 (N.Y. Sup. Ct. Mar. 09, 2021) (same).

The Trump Campaign argues that the Post and Mr. Sargent's political bias demonstrates actual malice. Compl. ¶¶ 18–19. Not so. Assuming the Trump Campaign is correct that the Post has consistently supported Democratic presidential candidates and that Mr. Sargent has previously published a commentary critical of Trump, "[i]t is settled that ill will toward the plaintiff or bad motives are not elements of actual malice and that such evidence is insufficient by itself to support a finding of actual malice." *Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987); *see also Risen*, 197 F. Supp. 3d at 263; *CNN Broad., Inc.*, 500 F. Supp. 3d at 1357.

The Trump campaign's "breathtaking" theory of actual malice would "infer[] . . . actual malice in a wide swath of investigative journalism that turns out to be critical of its subject." *Tah*, 991 F.3d at 243. That is not the law. The Trump Campaign's "unadorned claim of animus and bias cannot save [its] deficient pleading." *Cottle*, 404 F. Supp. 3d at 85.

Not only has the Trump Campaign failed to plead sufficient factual allegations supporting an inference of actual malice, the context of the alleged defamatory statement suggests the absence of actual malice. Notably, after claiming that the Mueller Report concludes that the Trump Campaign "tried to conspire with" Russian efforts to interfere in the 2016 U.S. presidential election, Mr. Sargent continued in the very next sentence, "Yet Mueller did not find sufficient evidence of a criminal conspiracy." Sargent Article at 4. Those two statements appear in the same paragraph, and read together, the second statement is plainly intended to qualify the first statement. The Sargent Article's inclusion of the qualifying statement is the kind of action that dispels actual malice. *See Jankovic*, 822 F.3d at 594 (finding that a "disclosure" which cuts against author's perspective "tend[s] to dispel any claim of actual malice"); *Lohrenz*, 350 F.3d at 1286 ("Such admissions, i.e., reporting perspectives at odds with the publisher's own, 'tend[ ] to rebut a claim of malice, not to establish one.'" (citation omitted)). The editorial choice here does not resemble the requisite knowledge or recklessness associated with, for example, a fabricated story or reliance on an unverified anonymous telephone call. *See Risen*, 197 F. Supp. 3d at 259.

The Wittes Article in The Atlantic also undermines the Trump Campaign's allegation of actual malice. The Trump Campaign suggests that the Mueller Report's conclusions "are a matter of widely disseminated public record," Compl. ¶ 20, as if the public record could self-evidently show that the Sargent Article's statement is false. But the Wittes Article, which the alleged defamatory statement in the Sargent Article hyperlinks, states this "key point" about the

9

Mueller Report: "If there wasn't collusion on the [Russian] hacking, it sure wasn't for lack of trying." Wittes Article at 7. The Wittes Article is consistent with the allegedly defamatory statement and undermines the notion that the Post was "subjectively aware" that its statement was "so inherently improbable that only a reckless person would have put [it] in circulation." *Risen*, 197 F. Supp. 3d at 259 (quoting *Lohrenz*, 350 F.3d at 1283); *see Cottle*, 404 F. Supp. 3d at 85. Thus, the Trump Campaign has failed to adequately plead actual malice with respect to the Sargent Article.[2]

### B. Waldman Article

The Trump Campaign's defamation claim concerning the Waldman Article fares no better because the statement at issue there is non-actionable opinion. Under New York law, "[e]xpressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Mann v. Abel*, 885 N.E.2d 884, 885–86 (N.Y. 2008) (citation omitted).[3] The New York Court of Appeals has drawn a distinction between "pure" opinions, which are protected, and "mixed" opinions, which are not. *See Davis v. Boeheim*, 22 N.E.3d 999, 1004 (N.Y. 2014). "A pure opinion may take one of two forms. It may be 'a statement of opinion which is accompanied by a recitation of the facts upon

---

[2] The Court also finds persuasive, upon initial review, the Post's additional argument that the Sargent Article lacks actual malice because it is a "rational interpretation" of an ambiguous government report. Mot. at 27–28 (quoting *Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971)). But it is unclear whether it is appropriate to apply this standard at the motion to dismiss stage, and the parties did not brief this specific question. Accordingly, the Court will not rely on this argument in reaching its decision.

[3] Federal courts applying New York defamation law have observed that the New York Constitution provides greater protection to opinions than does the Federal Constitution, and thus rely on the New York standard. *See, e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 695 (11th Cir. 2016) ("We note that New York's law on this point is broader and more protective of speech than the requirements found in the Federal Constitution." (citing *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 178 (2d Cir. 2000)). The Court will do the same here.

which it is based,' or it may be '[a]n opinion not accompanied by such a factual recitation' so long as 'it does not imply that it is based upon undisclosed facts.'" *Id.* (citations omitted).  By contrast, a mixed opinion "implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it." *Id.* (citations omitted).

Accordingly, "[t]he 'essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were . . . written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion.'" *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 178 (2d Cir. 2000) (quoting *Steinhilber v. Alphonse*, 501 N.E.2d 550, 553 (N.Y. 1986)).  "Distinguishing between fact and opinion is a question of law for the courts, to be decided based on 'what the average person hearing or reading the communication would take it to mean.'" *Davis*, 22 N.E.3d at 1004–05 (citations omitted).

New York courts consider three factors in this analysis: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact." *Mann*, 885 N.E.2d at 886 (citation omitted).  The third *Mann* factor is especially important, as the New York Court of Appeals has emphasized "a holistic approach to this inquiry." *Davis*, 22 N.E.3d at 1005.  "The burden rests with the plaintiff to establish that in the context of the entire communication a disputed statement is not protected opinion." *Celle*, 209 F.3d at 179.

Here, the Court finds that the alleged defamatory statement in the Waldman Article—"For instance, who knows what sort of aid Russia and North Korea will give to the Trump campaign, now that he has <u>invited</u> them to offer their assistance?"—is a statement of nonactionable opinion. Waldman Article at 4 (underline in original). The Post acknowledges that this statement is comprised of two parts: first, "an assertion that President Trump 'has invited' foreign assistance" from Russia and North Korea; and second, "a question 'who knows what sort of aid Russia and North Korea will give to the Trump campaign?' as a result." Reply at 8–9 (quoting Waldman Article at 4). The Court finds this framework helpful and accordingly will analyze each part of the statement in turn.

At first glance, the statement that Trump has invited assistance from Russia and North Korea seems factual. Under the first two *Mann* factors, this assertion appears precise and verifiable—either Trump invited their assistance, or he did not. But critically, that is not the end of the inquiry—or even the focal point. The New York Court of Appeals has instructed that "[r]ather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the . . . plaintiff.'" *Davis*, 22 N.E.3d at 1005 (citation omitted). Here, the third *Mann* factor—that is, the overall context of the statement— weighs heavily in favor of nonactionable opinion.

To begin, the form of the Waldman Article alerts the reader that the statement is one of opinion, not fact. "[T]he common expectation is that the columns and articles published on a newspaper's Op Ed sections will represent the viewpoints of their authors and, as such, contain considerable hyperbole, speculation, diversified forms of expression and opinion." *Brian v.*

*Richardson*, 660 N.E.2d 1126, 1130 (N.Y. 1995). New York courts have therefore routinely dismissed defamation claims concerning statements in opinion columns. *See, e.g.*, *The New York Times Co.*, 2021 WL 938979, at *1 ("[T]he overall context in which the article was published, in the opinion section of the newspaper, signaled to the reader that 'the broader social context and surrounding circumstances [indicate] that what is being read … is likely to be opinion, not fact.'" (quoting *Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1167 (N.Y. 1993))).

In addition to its form, the Waldman Article's hyperbolic and colorful tone also signal opinion, not fact. *See, e.g.*, Waldman Article at 3 (claiming that Trump's 2018 midterm messaging was "This election is about me, and also immigrants are coming to kill you."); *id.* at 4 (speculating that for the 2020 election, the "president [is] convinced that if he just gets his supporters a little angrier, his victory will be assured"). The opinionated tone of the column is typical fare one finds in "heated political debate" and criticism about a presidential candidate—all part of the "broader social context" in which the statement was made. *Melius v. Glacken*, 943 N.Y.S.2d 134, 136 (N.Y. App. Div. 2012); *see Frechtman v. Gutterman*, 979 N.Y.S.2d 58, 62 (N.Y. App. Div. 2014) ("[E]ven apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole." (quoting *Steinhilber*, 501 N.E.2d at 556)). Placed in its proper context, the seemingly "flat statement" that Trump "invited" assistance from Russia and North Korea takes on a rhetorical, livelier meaning. *Steinhilber*, 501 N.E.2d at 556.

But that is not all. In addition to the opinionated context of the piece, the Waldman Article specifically provides the factual basis for its statement. The word "invited" in the allegedly defamatory statement hyperlinks to an unedited transcript of an Oval Office interview,

13

where ABC News anchor George Stephanopoulos asked Trump about Russian interference in the 2016 U.S. presidential election and Trump's plans for the 2020 election. During the interview, this exchange occurred:

> **Stephanopoulos**: Your campaign this time around, if foreigners, if Russia, if China, if someone else offers you information on opponents, should they accept it or should they call the FBI?
>
> **President Trump:** I think maybe you do both. I think you might want to listen, there's nothing wrong with listening. If somebody called from a country, Norway, "we have information on your opponent." Oh, I think I'd want to hear it.
>
> **Stephanopoulos:** You want that kind of interference in our elections?
>
> **President Trump:** It's not an interference, they have information. I think I'd take it. If I thought there was something wrong, I'd go maybe to the FBI. If I thought there was something wrong. But when somebody comes up with oppo research, right, they come up with oppo research. Oh, let's call the FBI. The FBI doesn't have enough agents to take care of it, but you go and talk honestly to congressmen, they all do it, they always have. And that's the way it is. It's called oppo research.

ABC Interview at 7 (underline removed).

Courts applying New York defamation law have routinely found statements nonactionable opinion when they hyperlink the factual basis underlying the challenged statement.[4] *See, e.g.*, *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 415 (N.Y. App. Div. 2011) (finding that email suggesting that resort's hiring practices were racist was nonactionable opinion because "each remark is prompted by or responsive to a hyperlink"); *Ganske v. Mensch*, 480 F. Supp. 3d 542, 555 (S.D.N.Y. 2020) (finding statement that the plaintiff "clearly personally spread Russian bots on [his] own site" nonactionable opinion

---

[4] "The hyperlink . . . has become 'the twenty-first century equivalent of the footnote for the purposes of attribution in defamation law, because it has become a well-recognized means for an author or the Internet to attribute a source." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 554 (S.D.N.Y. 2020) (citation omitted); *accord Adelson v. Harris*, 973 F. Supp. 2d 467, 484 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017).

because "Defendant both referenced and hyperlinked to the data on which her opinion" was based); *Pelkowski v. Hovermann*, No. 20-cv-1845, 2021 WL 9032222, at *6 (E.D.N.Y. Sept. 9, 2021) (ruling that statement that the plaintiff "enjoys" "shoplifting from small businesses" was protected opinion because the accompanying "disclosed footage . . . allows a reasonable viewer to make up his or her own mind" about author's claim). In each case, the courts found the challenged statement nonactionable opinion because "[f]ar from suggesting that the writer knows certain facts that his or her audience does not know, the [statement] is supported by links to the writer's sources." *Sandals Resorts*, 925 N.Y.S.2d at 416.

Likewise, the Waldman Article discloses the factual basis behind its opinion. By hyperlinking the ABC interview transcript directly to the word "invite," it "ensure[s] that the reader has the opportunity to assess the basis upon which the opinion was reached in order to draw [the reader's] own conclusions concerning its validity." *Davis*, 22 N.E.3d at 1004 (citation omitted). A reader reviewing the transcript of the ABC interview may ultimately disagree with Mr. Waldman's view that Trump "invited" North Korea's assistance, however colorfully interpreted, but that is irrelevant. "The actionable element of a 'mixed opinion' is not the false opinion itself—it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking." *Gutterman*, 979 N.Y.S.2d at 62 (quoting *Steinhilber*, 501 N.E.2d at 553). Thus, the Court concludes that the first part of the challenged statement is nonactionable opinion.

The second part of the statement—"who knows what sort of aid Russia and North Korea will give to the Trump campaign?"—is also nonactionable opinion. Again, the form and tone of the opinion column, along with the broader social context, prime the reader to expect opinion, not fact. Furthermore, the second part of the statement is a question, not an assertion. Questions

15

are "an exercise in rhetoric." *Sandals Resorts*, 925 N.Y.S.2d at 415.  As then-Judge Kavanaugh observed after surveying various jurisdictions' defamation laws, "posing questions has rarely given rise to successful defamation claims" because "[q]uestions can be posed to explore, to inquire, to prompt further inquiry, to frame discussion, to initiate analysis, and the like.  But questions are questions." *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1338–39 (D.C. Cir. 2015); *see also Abbas v. Foreign Pol'y Grp., LLC*, 975 F. Supp. 2d 1, 16 (D.D.C. 2013) (observing that "questions invite the reader to form her own judgments").  Two further clues demonstrate the speculative nature of this question.  First, Mr. Waldman begins the question with the words "who knows"?  Waldman Article at 4.  Second, the sentence preceding this phrase states, "The 2020 election will obviously be distinct in all kinds of ways *we can't yet anticipate*." *Id.* (emphasis added).  Under the three *Mann* factors, this question lacks a precise meaning, is not capable of being proven true or false, and is surrounded by context indicative of opinion.  Thus, the second part of the challenged statement is also nonactionable opinion.

      At oral argument, the Trump Campaign also argued that the second part of the statement contains its own factual predicate: that Russia and North Korea *will* give aid to the Trump Campaign, even if it is unclear what *sort* of aid they will give.  *See* Hr'g Tr. at 34:18–37:10.  Neither the Complaint nor the opposition brief raised this argument, *see* Compl. ¶ 16–17, 27; Opp'n at 11, so the Court need not consider it, *see U.S. ex rel. Davis v. District of Columbia*, 793 F.3d 120, 127 (D.C. Cir. 2015) ("Generally, arguments raised for the first time at oral argument are forfeited.").  Regardless, it also fails on the merits.  The statement does not imply such fine distinctions.  "Courts must be mindful that the 'hypertechnical parsing of a possible fact from its plain context of opinion' imperils 'the cherished constitutional guarantee of free speech.'" *Pelkowski*, 2021 WL 9032222, at *6 (cleaned up) (citing *Immuno AG. v. Moor-Jankowski*, 77

N.Y.2d 235, 256 (N.Y. 1991)).  Given the "plain context of opinion" here, the Court rejects the Trump Campaign's "hypertechnical" reading.[5]

\* \* \*

The Post seeks dismissal with prejudice.  *See* Mot. at 37.  Although the Court grants the Post's motion to dismiss, it will dismiss the Complaint without prejudice to afford the Trump Campaign another opportunity to adequately plead factual allegations on the element of actual malice.  *See Cottle*, 404 F. Supp. 3d at 87.  The Court will give the Trump Campaign 30 days to file a motion seeking leave to amend that attaches a proposed amended complaint.  If no proposed amended complaint is received within that 30 day period, the dismissal will convert to with prejudice.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 12) is granted.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 3, 2023                                                                           RUDOLPH CONTRERAS
                                                                                                                        United States District Judge

---

[5] Even were the Waldman Article's statement a statement of fact, the Complaint nonetheless fails to plausibly allege that the statement was made with actual malice, which is a separate and independent basis for dismissing the claim.